IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-476-D

| | | |
|---|---|---|
| NORTH CAROLINA WILDLIFE FEDERATION, et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, et. al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

The plaintiffs, North Carolina Wildlife Federation, Clean Air Carolina, and Yadkin Riverkeeper, filed suit in the Eastern District of North Carolina on November 2, 2010. The defendants, North Carolina Department of Transportation ("NCDOT"),[1] Eugene Conti, Secretary of NCDOT, Federal Highway Administration ("FHWA"), and John F. Sullivan, FHWA Division Administrator, are responsible for planning and authorizing the construction of the Monroe Connector/Bypass project in Union County, North Carolina. Plaintiffs allege that the defendants have not carefully analyzed the environmental impacts associated with the proposed project, in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq. More specifically, plaintiffs allege the defendants violated NEPA by: (1) conducting a flawed analysis of alternatives; (2) failing to analyze the environmental impacts of the Monroe Connector/Bypass project; and (3) presenting false and misleading information to other agencies and to the public.

---

[1] Until 2009, the North Carolina Turnpike Authority ("NCTA") existed independently from the NCDOT. The NCTA is now within the NCDOT and subject to the supervision of the Secretary of Transportation. See N.C. Gen. Stat. § 136-89.182(b).

On November 23, 2010, plaintiffs filed a motion for a preliminary injunction against the defendants [D.E. 8]. The parties submitted a joint motion requesting an expedited hearing [D.E. 12], which the court granted [D.E. 18]. On December 16, 2010, the court held a lengthy hearing on plaintiffs' motion for a preliminary injunction. Plaintiffs seek to prevent defendants from proceeding with "any major step" that advances the Monroe Connector/Bypass project, including (but not limited to) the issuance of sales or revenue bonds, right-of-way acquisition, executing construction contracts, site preparation, and any construction activities. For the reasons stated below, plaintiffs' motion is denied.

I.

The purpose of a preliminary injunction is to preserve the status quo, thereby protecting a court's ability to render a meaningful judgment on the merits. See, e.g., In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525–26 (4th Cir. 2003); Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997). Because a preliminary injunction grants relief before trial, it is "an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). A preliminary injunction may only be awarded upon a "clear showing" that a plaintiff is entitled to such relief. Id. at 375–76; Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); Real Truth About Obama, Inc., v. FEC, 575 F.3d 342, 345–46 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010). To receive a preliminary injunction, a plaintiff must clearly show four things: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter, 129 S. Ct. at 374; Real Truth, 575 F.3d at 346. Plaintiffs must satisfy all four of these requirements. Real Truth, 575 F.3d at 346.

2

The basis of injunctive relief in the federal courts has always been the threat of irreparable harm and the inadequacy of legal remedies. Samson v. Murray, 415 U.S. 61, 88 (1974); Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991). Irreparable harm must be "neither remote nor speculative, but actual and imminent." Direx, 952 F.2d at 812 (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)); see also ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (establishing a risk of irreparable harm is not enough, a plaintiff must make a clear showing of immediate irreparable injury). The reason for this rule is simple. If a court is able to resolve the case on the merits before the injury would occur, there is no need for interlocutory relief. See, e.g., In re Microsoft, 333 F.3d at 525 (maintaining the status quo is justified only insofar as it aids the court in granting final relief); 11A Wright, Miller & Kane, Federal Practice and Procedure § 2948.1, at 139–49 (2d ed. 1995).

Here, plaintiffs argue that the defendants' actions are likely to cause irreparable harm to the environment and limit the choice of reasonable alternatives. See Nat'l Audubon Soc'y v. Dep't of Navy, 422 F.3d 174, 203 (4th Cir. 2005); 40 C.F.R. § 1506.1(a). Plaintiffs, however, have failed to make a clear showing that they will suffer irreparable harm before the court has an opportunity to resolve the case on the merits.

First, plaintiffs argue that the environment will suffer immediate and irreparable harm directly, because the defendants intend to begin construction in January 2011. See Pls.' Mot. Prelim. Inj. 1–2. Plaintiffs, however, have failed to substantiate this time-line, and defendants have produced evidence to the contrary. See State Defs.' Mem. Opp'n at 6, 27; Ex. 6 (DeWitt Aff.). According to the NCDOT, the NCDOT began accepting bids for the project from contractors in October 2010, and the bidding process will remain open until February 25, 2011. DeWitt Aff. ¶¶ 7–8. Once the NCDOT accepts a bid, the contractor will begin design work for the Monroe Connector/Bypass

3

project. Id. ¶¶ 6, 9–10.[2] Such design work takes place in an office and is itself subject to NCDOT review and approval. See Prelim. Inj. Hr'g Tr. 109–10, 120–21, Dec. 16, 2010. The contractor does not plan to "break ground" on the project before October 2011. DeWitt Aff. ¶ 10. Moreover, as plaintiffs concede, defendants are still waiting for the approval of permits which are necessary to begin construction. See Pls.' Mem. Supp. 7–8; DeWitt Aff. ¶ 9. Plaintiffs simply have failed to show that construction of the project is imminent. Furthermore, at the preliminary injunction hearing, the court asked defendants when they would have the administrative record prepared, and defense counsel advised the court that they could prepare the administrative record by January 31, 2011. Hr'g Tr. 106–07. It is the court's intention to resolve this case on the merits on a full record before any construction takes place. If, on a full record, the court determines that a permanent injunction is warranted, the court will not hesitate to issue it. In sum, plaintiffs have failed to make a clear showing that there will be any harm to the environment before the court resolves the merits of their NEPA claims on a full record.

---

[2] On the day of the preliminary injunction hearing, plaintiffs filed a motion to strike paragraph 10 from the DeWitt Affidavit [D.E. 25]. Defendants' responses are not due until January 12, 2011. Plaintiffs argue that paragraph 10 of the DeWitt Affidavit is based on hearsay. Pls.' Mot. Strike at 2. DeWitt is the Chief Engineer for the NCTA and is familiar with the Monroe Connector/Bypass project. DeWitt Aff. ¶¶ 1–2. The court finds paragraph 10 to be competent evidence based on DeWitt's personal knowledge of the project's design and anticipated construction schedule. In any event, preliminary injunction proceedings are not subject to trial procedures. See, e.g., Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). Therefore, a court may consider hearsay evidence. See, e.g., Heideman v. South Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003); Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 558 (5th Cir. 1987); Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir 1986); Lance Mfg., LLC v. Voortman Cookies Ltd., 617 F. Supp. 2d 424, 428 n.1 (W.D.N.C. 2009); 11A Wright, Miller & Kane, Federal Practice and Procedure § 2949, at 215–19 (2d ed. 1995). Accordingly, the court denies plaintiffs' motion to strike [D.E. 25] and considers the DeWitt Affidavit in its entirety.

Plaintiffs also argue that, without a preliminary injunction, they will suffer irreparable harm because the bureaucratic momentum of the project effectively will foreclose consideration of reasonable alternatives. For this reason, plaintiffs request a preliminary injunction that prohibits defendants from taking "any major step" to advance the Monroe Connector/Bypass project. See Pls.' Mot. Prelim. Inj. 6–7. Plaintiffs argue that this court should preliminarily enjoin activities such as selling project-specific revenue bonds, condemning properties, signing contracts, or making other major financial commitments. See id. Plaintiffs claim that, absent a preliminary injunction, these activities will result in a "bureaucratic steamroller" that will preclude a permanent injunction.

Plaintiffs have failed to show that the cited activities pose an actual and immediate risk of irreparable harm. See Winter, 129 S. Ct. at 375–76; Nat'l Audubon, 422 F.3d at 201–02, 204–07. Before the state defendants can pursue financing or enter into construction contracts, they must receive permits from the State Division of Water Quality and the U.S. Army Corps of Engineers. See Hr'g Tr. 29–30, 34–35, 110–11, 116–17, 121–22, 142. Moreover, the state defendants also must receive a permit from the State Division of Water Quality in order to obtain the permit from the Army Corps of Engineers. See id. at 110. It is unclear when — or if — the State Division and Army Corps of Engineers will approve these permits. As plaintiffs acknowledged during the preliminary injunction hearing, it may be months before these permits are issued. See id. at 41–42. Furthermore, even if the permits are issued, construction will not begin any earlier than October 2011. See DeWitt Aff. ¶ 10; Hr'g Tr. 124–25. This court intends to resolve this case on the merits well before October 2011. If defendants have violated NEPA, the court will not hesitate to issue a permanent injunction. Because plaintiffs have failed to make a clear showing of an immediate irreparable harm that will limit the choice of reasonable alternatives, the court declines to issue a preliminary injunction based on plaintiffs' "bureaucratic steamroller" argument.

II.

In sum, plaintiffs have failed to meet the heavy burden necessary to obtain a preliminary injunction. Thus, plaintiffs' motion for a preliminary injunction is DENIED without prejudice [D.E. 8]. Plaintiffs' motion to strike is DENIED [D.E. 25]. Defendants shall complete and serve the administrative record not later than January 31, 2011. The court will hold a status conference in this case on Friday, February 4, 2011, at 10:00 a.m. in Raleigh. Counsel should be prepared to discuss scheduling and discovery issues at the status conference. The court intends to move this case expeditiously to a decision on the merits on a full record.

SO ORDERED. This 30 day of December 2010.

JAMES C. DEVER III
United States District Judge